**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JEREMY REED** : | |
| **4329 Pembrook Village Drive** | |
| **Alexandria, Virginia 22309** : | |
| **Plaintiff,** : | |
| v.  : | Case No. _____ |
| **WASHINGTON METROPOLITAN AREA** : | |
| **TRANSIT AUTHORITY (a/k/a "WMATA")** | |
| **600 Fifth Street NW** : | |
| **Washington, DC 20001** | |
| : | |
| Serve:  **Carol O'Keeffe, Esquire** | |
| **General Counsel's Office** : | |
| **WMATA** | |
| **600 Fifth Street NW** : | |
| **Washington, DC 20001** | |
| : | |
| **Defendant.** | |
| : | |

**COMPLAINT FOR DAMAGES**
(Metro Subway Passenger Injured by Smoke Inhalation)

COMES NOW Plaintiff, Jeremy Reed, and respectfully moves for judgment against Defendant, Washington Metropolitan Area Transit Authority ("WMATA"), on grounds and in the amount set forth below:

**JURISDICTION AND VENUE**

1. Jurisdiction in this Court is founded on the Washington Metropolitan Area Transit Regional Compact, which establishes original jurisdiction in this Court over WMATA matters pursuant to WMATRC Article XVI § 81, codified in District of Columbia law as D.C. Code Ann. § 9-1107.10.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 1 -

2. Venue in this Court is proper as the negligent acts and/or omissions committed by Defendant occurred in the District of Columbia, and the injuries of the Plaintiff occurred in the District of Columbia.

## PARTIES

3. At all times relevant, Plaintiff, Jeremy Reed, was and is an adult citizen and resident of the Commonwealth of Virginia.

4. At all times relevant herein, Defendant WMATA was the owner of the Metro subway system being operated by its employees, who were acting within the course and scope of their employment and/or agency with WMATA.

5. Defendant Washington Metropolitan Area Transit Authority ("WMATA") was created when Congress approved the Washington Metropolitan Area Transit Authority Compact ("WMATA Compact"), D.C. Code § § 9-1107.01 *et seq.,* which was signed by the District of Columbia, Maryland, and Virginia.

6. By the terms of the WMATA Compact that created it, WMATA is liable for its negligent acts and/or omissions and those of its Directors, officers, employees, and agents committed in the conduct of any proprietary function. D.C. Code § 9-1107.01(80).

7. The provision of mass transportation is a proprietary function within the meaning of the WMATA Compact.

## FACTS

8. On the afternoon of January 12, 2015, Mr. Reed was a passenger on WMATA Train 302, a six-car train traveling on the Yellow line toward Huntington, Virginia, with over two hundred passengers on board.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

9. At approximately 3:15 p.m., several hundred feet after having left the L'Enfant Plaza station, Train 302 encountered dense smoke in the tunnel and came to an abrupt halt.

10. Upon information and belief, a circuit breaker had tripped on the third rail (the conductor running alongside the train tracks that supplies high-voltage electric power to Metro trains) of that section of track approximately ten minutes beforehand, but it went uninvestigated by WMATA.

11. Train 302 becomes disabled in the tunnel, without power, and was illuminated by emergency lighting only.

12. Passengers on Train 302 are instructed to remain calm, to stay on the train, and to keep the doors closed, and were further told that they will be returning to the L'Enfant Plaza station in short order. These instructions were repeated during the passengers' ordeal.

13. At approximately 3:16 p.m., WMATA Operations Control Center attempted to activate ventilation fans to evacuate the smoke from the relevant section of tunnel. Upon information and belief, the fans fail to achieve their objective due to their failure to activate, their activation in the wrong direction, and/or some other cause.

14. According to the National Transportation Safety Board's Preliminary Report on the incident,[1] released January 16, 2015, the smoke in the tunnel was caused by "severe electrical arcing" from the third rail approximately 1,100 feet ahead of where

---

[1] NATIONAL TRANSPORTATION SAFETY BOARD, *Preliminary Report: WMATA Smoke and Electrical Arcing Accident in Washington, DC*, Jan. 16, 2015, http://www.ntsb.gov/investigations/AccidentReports/Pages/DCA15FR004_preliminary.aspx.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Train 302 stopped. Photos taken by NTSB investigators reveal severity of the damage done by the arcing:

 

15. At approximately 3:18 p.m., the District of Columbia Office of Unified Communications ("OUC") received a 911 call from a construction worker, who reported smoke emanating from a Metro ventilation shaft located at 9th Street and Maine Avenue SW, roughly a half-mile south of the train's location.

16. At approximately 3:22 p.m., OUC received a 911 call from WMATA Supervisor of Metro Rail Unit 22 reporting heavy smoke in the L'Enfant Plaza station.

17. At approximately 3:25 p.m., the train traveling just behind Train 302 on the same route arrived at the L'Enfant Plaza station, encountered smoke, and stopped roughly 100 feet short of the southern end of the platform.

18. At approximately 3:28 p.m., OUC dispatches a "Metro Station Box Alarm," which, in compliance with District of Columbia Fire and Emergency Medical Services Department ("FEMS") protocol, includes the following units: (a) 5 Engine Companies; (b) 2 Ladder Trucks; (c) 2 Battalion Fire Chiefs; (d) 1 Battalion Fire Chief to WMATA Operations Command Center ("OCC") in Landover, MD; (e) 1 Heavy

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Rescue Squad; (f) 1 Basic Life Support Unit; (g) 1 Advanced Life Support Unit: and (h) 1 EMS Supervisor.

19. At approximately 3:31 p.m., the first FEMS responders arrived on-scene at the L'Enfant Plaza station. From the beginning, their efforts are hampered by the fact that WMATA has not updated its signal-boosting and signal-relaying equipment to ensure compatibility with new FEMS standards. Upon information and belief, FEMS had notified WMATA of this problem in the L'Enfant Plaza station at least as early as January 8, 2015.

20. At approximately 3:33 p.m., OUC received the first of several 911 calls from frightened passengers on smoke-filled Train 302.

21. Not until approximately 3:44 p.m. does WMATA confirm to FEMS that electricity to the relevant sections of the third rail has been shut off in order to allow the FEMS crews to safely access Train 302.

22. Not until approximately 4:00 p.m. are the passengers evacuated from Train 302.

23. Plaintiff, as one of the passengers stuck in the smoked-filled train, sustained serious pulmonary injuries, feared for his life and the lives of others while trapped, and sustained other physical and emotional injuries, as he struggled to survive.

### COUNT I
### (Negligence)

24. Plaintiff incorporates, by reference, paragraphs 1 through 23, above

25. Plaintiff further alleges that at all times relevant herein, WMATA's trains, railroad operations, tunnels, tracks, and adjoining railroad tracks (the "subway

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 5 -

property") were owned, controlled, operated, managed, constructed, maintained, repaired, designed, evaluated, built, overseen, patrolled, and supervised by WMATA.

26. Plaintiff further alleges that on January 12, 2015, and prior thereto, Defendant WMATA was responsible for maintaining and ensuring the safe use and proper condition of the railroad operations and property, including locomotives, trains, signs, signal, switches, safety devices, communication devices, and other equipment at and along the subway property, and for properly and safely managing, overseeing, and coordinating the travel of railroad trains upon and along said property.

27. At all times mentioned herein, Defendant WMATA, as a common carrier, owed a duty of reasonable care to its passengers.

28. Plaintiff further allege that Defendant WMATA breached this duty in some or all of the following ways:

    a. By failing to properly inspect and maintain the third rail running through the relevant section of tunnel;

    b. By failing to properly inspect and maintain the ventilation system for the relevant section of tunnel;

    c. By failing to properly train its agents, servants, and/or employees in the proper activation and use of the ventilation system in the event of a fire or smoke emergency;

    d. By failing to calibrate its radio equipment to be compatible with that of FEMS despite having clear notice of its non-compliance;

    e. By failing to equip its trains, specifically Train 302, with safety equipment adequate for emergencies of this nature;

    f. By failing to adequately investigate the third-rail circuit breaker that tripped at 3:06 p.m. on January 12;

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

    g.    By failing to move Train 302 to a safe location (*e.g.*, back to the L'Enfant Plaza station) after it first encountered smoke in the tunnel;

    h.    By failing to in a timely manner shut off electricity to the third rail in the relevant section of tunnel;

    i.    By failing to in a timely manner inform FEMS that electricity had been shut off to the third rail in the relevant section of tunnel;

    j.    By failing to in a timely manner evacuate Train 302 if and when it was determined that the train could or would not be moved and its cars were filling with smoke; and/or

    k.    By otherwise negligently, carelessly, and wrongfully failing to take reasonable precautions to protect its passengers from injury and death.

29. As a direct and proximate result of Defendant WMATA's negligence, Mr. Reed was trapped, helpless, in Train 302 for nearly forty-five minutes as it filled with smoke.

30. As a direct and proximate result of Defendant WMATA's negligence, Mr. Reed feared for his life and the lives of others, sustained significant pulmonary injuries, breathed in harmful smoke, and experiences extreme helplessness, fright, anxiety, and anguish, both physically and emotionally.

31. As a further direct and proximate result of Defendant WMATA's negligence, Mr. Reed has suffered, and will continue to suffer, severe injuries, and extreme physical and emotional damages; has incurred, and will continue to incur, substantial medical expenses; and has incurred, and will continue to incur, lost wages.

WHEREFORE, Plaintiff, Jeremy Reed, demands judgment against Defendant in the full and just amount of One Million Dollars ($1,000,000), plus interest and cost.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

## JURY DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

>Respectfully submitted,
>
>REGAN ZAMBRI LONG
>
>
>By: */s/ Salvatore J. Zambri*_____
>Salvatore J. Zambri         #439016
>szambri@reganfirm.com
>1919 M Street NW, Suite 350
>Washington, DC  20036
>P<small>H</small>:  (202) 463-3030
>F<small>X</small>:  (202) 463-0667
>*Counsel for Plaintiff*